```
                                                                    1
 1                  UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEVADA
 2

 3   ---------------------------------x
                                      :
 4   UNITED STATES OF AMERICA,        :
                                      :
 5             Plaintiff,             :
                                      :
 6        v.                          :  Case No.
                                      :  2:12-CV-804-LDG-GWF
 7   CLIVEN D. BUNDY,                 :
                                      :
 8             Defendant              :
                                      :
 9   ---------------------------------x

10

11                          333 Las Vegas Boulevard, South
                            Las Vegas, Nevada
12

13                          Tuesday, October 23, 2011

14   Deposition of:

15                    CLIVEN D. BUNDY

16   a witness, called for examination by counsel for the

17   Plaintiff, pursuant to notice and agreement as to time and

18   place, at the United States Attorney's Office, Las Vegas,

19   Nevada, before Sandy A. Dahlheimer, a Notary Public, where

20   were present on behalf of the respective parties:

21

22

23

24

25
                         FREE STATE REPORTING, INC.
                         Court Reporting/Transcription
                            D.C. Area 301-261-1902
                          Balt.& Annap. 410-974-0947
```

```
 1                    A P P E A R A N C E S

 2
     On Behalf of the Plaintiff:
 3
     TERRY M. PETRIE, ESQ.
 4   United States Department of Justice
     Environment and Natural Resources Division
 5   Natural Resources Section
     999 18th Street, South Terrace
 6   Suite 370
     Denver, Colorado  80202
 7
     NANCY C. ZAHEDI, ESQ.
 8   GREGORY LIND, ESQ.
     Department of the Interior
 9   Office of the Solicitor
     Pacific Southwest Region
10   2800 Cottage Way
     Suite E-1712
11   Sacramento, California  95825

12   ALICE C. NEWTON
     Lake Mead National Recreation Area
13   601 Nevada Way
     Boulder City, Nevada  89005
14
     LAUREN BROWN
15   Bureau of Land Management
     4701 North Torrey Pines Drive
16   Las Vegas, Nevada  89130

17   On Behalf of the Defendant:

18   CLIVEN D. BUNDY, IN PRO PER
     Post Office Box 7175
19   Bunkerville, Nevada  89007
     702-346-5564
20

21   Also Present:  Carol Bundy

22

23

24

25
```

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

1                              I N D E X

2    Witness                Examination By              Page

3    Cliven D. Bundy        Terry M. Petrie - Direct      5

4

5                            E X H I B I T S

6
     Exhibit No.           Description                  Marked
7
     Exhibit No. 1     October 2, 2012 Letter              5
8    Exhibit No. 2     Alphabetical Listing of Cattle     13
                        and Horse Brands
9    Exhibit No. 3     Complaint                          22
     Exhibit No. 4     Map                                 36
10   Exhibit No. 4-A   Map (not provided)                 52
     Exhibit No. 5     Request for Interrogatories        43
11   Exhibit No. 6     Defendant's Statement              52
     Exhibit No. 7     Bundy Ranch Blog                   62
12   Exhibit No. 8     Defendant's Statement              75
     Exhibit No. 9     Violation of the Full Force and    76
13                      Effect Decision
     Exhibit No. 10    Decision by Supreme Court          80
14   Exhibit No. 10-A  Supremacy Clause                   80
     Exhibit No. 11    Article from High Country News     92
15   Exhibit No. 12    Answer to complaint               100

16

17

18

19

20

21

22

23

24

25

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

```
                                                                4
 1                    P R O C E E D I N G S
 2                                                       (1:10 p.m.)
 3   Whereupon,
 4                         CLIVEN D. BUNDY
 5   was called as a witness, having been first duly sworn, was
 6   examined and testified as follows:
 7                       DIRECT EXAMINATION
 8            BY MR. PETRIE:
 9        Q.  Mr. Bundy, how are you today?
10        A.  I'm here.
11        Q.  Okay.  I'm Terry Petrie.  I am an attorney with
12   the United States Department of Justice.  I represent the
13   United States in this lawsuit.
14            You and I have had the chance here earlier before
15   we started to get a chance to meet each other as we waited
16   outside in the lobby there to the U.S. Attorney's Office
17   here in Las Vegas.
18            Sir, I'm going to be asking you a number of
19   questions today, and I'll be showing you some documents as
20   well.  Okay.
21            And the very first document that I'm going to
22   give you -- and what I'll do is be giving you a document.
23   We'll talk about what the document is, and then from there
24   some questions will flow.  Okay.
25            And one of the things I want you to know up front
```

5

1   is that when you receive a document, you should feel free
2   to take your time and to read the entire document if you
3   want.  Okay.  I don't want you to feel as if you're being
4   asked questions about contents of documents for which you
5   think, well, jeez, what's this document about?  Context is
6   always important and so I want you to understand that you
7   have that opportunity here today to make sure you know what
8   the document is in front of you.
9          Okay.  So with that in mind, let me hand you what
10  we'll mark as -- and we mark the documents as exhibits.
11  I'm going to hand you a document that we'll mark as Exhibit
12  1.  I'm going to hand you a copy of it, sir
13         (Whereupon, Exhibit 1 was marked for
14  identification.)
15         BY MR. PETRIE:
16    Q.   Go ahead and take a moment, sir, to look at the
17  document.
18    A.   Okay.  I think I understand where we're at here.
19    Q.   Sir, what you have in front of you is a letter
20  dated October 2, 2012, and it's from me to you.  Attached
21  to the letter are a couple of attachments; and it's the
22  second attachment that I wanted to bring out for purposes
23  of the deposition today.  And that document is a Notice of
24  Deposition, and it's a Notice of Deposition in this case
25  and it is for you to appear today at this deposition.

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

1   A.   Well, I don't know.  Yes, let's say yes.  The
2   reason I question that is there's no fence or divider
3   between that allotment and my ranch.
4   Q.   That allotment being Bunkerville Allotment?
5   A.   Well, that's called Bunkerville Allotment, my
6   ranch.
7   Q.   I'm sorry?
8   A.   Bunkerville Allotment, we need to change that
9   name to my ranch.  I don't recognize "allotment" anymore.
10  Q.   Just that we're clear about that, the location of
11  your ranch, what is it?  How many acres for the ranch and
12  the farm?
13  A.   I'm not sure on this approximately.  I don't know
14  with the grazing, 150,000 acres probably.
15  Q.   Now, let's make sure that you and I are on the
16  same page here.  You have a mortgage, or at this point in
17  time, the title, a fee title, to a ranch there located
18  about 10 miles from Bunkerville?
19  A.   You know that's not relevant to this.
20  Q.   Sir, it is relevant.
21  A.   It's not relevant.
22  Q.   Sir, it is.  And I can assure you it's not my
23  intention to mislead you.  In a deposition, there's a wide
24  range of relevance, and the only questions that a party can
25  refuse to answer is if one, the question is asking for what

1  the law considers to be privileged information. Another
2  example is if the question will be violating an order of
3  the Court governing the proceedings. The question here
4  doesn't fall into either category.
5         You've made a statement that your ranch is one
6  hundred fifty something thousand acres; and you've equated
7  as if it's synonymous, your ranch, with what used to be
8  known as an area of land described as the Bunkerville
9  Allotment -- the former -- now former Bunkerville
10 Allotment. And I'm trying to ascertain what portion of
11 that 150,000 acres do you actually have a piece of paper
12 that says you hold title to it.
13     A.   Okay. I object to your question and certify it.
14     Q.   And those questions -- that's very good and
15 she'll certify it so that if later this becomes a piece of
16 testimony that is proposed to be offered into evidence at a
17 trial, then the judge will certainly take note of the
18 objection and determine whether or not my question was
19 proper or not. Absolutely. Okay. If you can go ahead and
20 answer the question, please, sir.
21     A.   Let me ask you a question. I said it was not
22 relevant. That lawsuit has -- is over new trespass lands,
23 and I'm not going to go too much further than what new
24 trespass land is. I'll make that part of my record. I'm
25 not going to go outside of that boundary.

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

1  asking if you had always lived at the ranch; and as an
2  adult, and you mentioned in response that there were some
3  times that you had not lived on the ranch but you had used
4  it as a base of operations. Do you remember that?
5      A.   Yes.
6      Q.   That base of operations, by that, are you
7  referring to the physical ranch, the boundaries of the
8  ranch that you grew up on as it then existed?
9      A.   I'm referring to the ranch as a unit, a total
10 unit.
11     Q.   Okay. And what I'm trying to understand though
12 is this. The ranch you grew up on did not include one
13 hundred fifty plus thousand acres of what is now known as
14 the former Bunkerville Allotment; did it?
15     A.   Yes, yes.
16     Q.   It did?
17     A.   It did.
18     Q.   It did. And did you have any kind of piece of
19 paper that says you have title to that one hundred fifty
20 plus thousand acres of land?
21     A.   I have either bought it or inherited it.
22     Q.   You're not answering the question. The question
23 is: Do you have any kind of piece of paper that suggests
24 you have title to one hundred fifty plus thousand acres of
25 what is now known as the former Bunkerville Allotment?

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

1   A.   No.

2   Q.   Since the year 2000 -- my question is going to
3   focus from the year 2000 through today -- have you grazed
4   your cattle on lands both inside the former Bunkerville
5   Allotment, which you now have characterized here today as
6   your ranch, as well as lands outside of the Bunkerville
7   Allotment outside your ranch?

8   A.   Yes.

9   Q.   Has that been done routinely over the course of
10  those now 12 years?

11  A.   Yes.

12  Q.   When you graze your cattle, is there some kind of
13  a system or methodology that you use with it?  In other
14  words, is it like a continuous grazing operation that you
15  have out there?

16  A.   Yes.

17  Q.   Year round basically?

18  A.   Yes.

19  Q.   What I'm going to do here, sir -- let's go off
20  the record.

21       (Off the record.)

22       (On the record.)

23       BY MR. PETRIE:

24  Q.   What I'm going to do, sir, is hand you a map that
25  we'll mark as Exhibit 4 that was prepared for this case.

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

64

1    A.   Right.

2    Q.   Where is the Gold Butte headquarters located?
3 And let's go ahead and mark it again on this map. We'll
4 use the black marker and we'll just use HQ to denote that.

5    A.   This thing turned round right here. HQ?

6    Q.   Yes, sir.

7    A.   (Witness complies.)

8    Q.   Thank you. And this appears to be located in
9 what would be the southeast corner of the area that you
10 previously marked for the outer limits for where you
11 understand your cattle have grazed; is that correct, sir?

12    A.   Yes.

13    Q.   And that appears to be a portion of the map,
14 which the Government contends is new trespass lands?

15    A.   Yes.

16    Q.   Thank you.

17         Speaking of the cattle that were grazing, sir, we
18 talked earlier about how your ranch has employed the use of
19 brand marks and earmarks, brands and earmarks; is that
20 right, sir?

21    A.   Yes.

22    Q.   Okay. Some of the cattle that you have grazed,
23 are they unbranded?

24    A.   Yes.

25    Q.   About what percentage, if you've got a sense of

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

65

1  that?
2      A.  On the knoll -- new trespass land, I would just
3  estimate -- you wanted to know about the branded or
4  nonbranded now?
5      Q.  Nonbranded.
6      A.  I would say approximately 40 percent of them are
7  nonbranded.
8      Q.  If -- don't laugh at this question because it's
9  probably got a very logical answer, but you're fielding a
10 question from a guy who does not run cattle.  For somebody
11 like Petrie, he goes out there and he comes across one of
12 your unbranded cattle.  Is there anything about the cow
13 that would tell Petrie that, yes, this cow belongs to
14 Cliven Bundy?
15     A.  Two things, the genetic of the animal and the
16 herd it was running with.
17     Q.  The latter suggesting that, if an unbranded cow
18 is in the presence of other Bundy marked cattle, there is
19 pretty good odds it's also a Bundy cow?
20     A.  Yes.
21     Q.  I wasn't clear on that and I appreciate you're
22 educating me.
23         Sir, and this will revisit an item we were
24 discussing earlier, but specifically to the new trespass
25 lands, do you have any kind of fee title to any of those

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947

1          Now, let's go back to the question.  Let's assume
2     the federal authorities have the authorization to present
3     themselves on land, whether you call it your ranch or the
4     former Bunkerville Allotment, or for that matter the new
5     trespass lands, and they've got the authorization in hand
6     to remove cattle that belongs to you and they literally,
7     physically, take the steps necessary to accomplish that
8     right there and you're standing by.
9          Are you going to undertake any effort to
10    physically stop that?
11       A.   Yes.
12       Q.   What efforts would that be?
13       A.   Whatever it takes.
14       Q.   Okay.  Would that include -- when you say
15    "whatever it takes," would that include the soliciting, the
16    assistance of neighbors, friends, family, supporters of
17    yours to do whatever it takes in the scenario I just
18    described?
19       A.   Yes.
20       Q.   Whatever it takes -- well, no.  Okay.
21            Sir, as you know, there was an earlier
22    proceeding, an earlier case, that the United States brought
23    against you back in the late '90s, 1998, 1999.
24            Do you recall that the Court issued an order for
25    you to remove your cattle that the Court determined were

100

1  trespassing on the lands that we call the former
2  Bunkerville Allotment and which you now call the Bundy
3  ranch? Do you recall that?
4      A.  Yes.
5      Q.  You never removed your cattle, did you?
6      A.  Right.
7      Q.  Sir, one last question here and we'll let you and
8  your wife get on with your day. After that topic, whatever
9  it takes, this is going to be a tame ending.
10         If you would take a look at the answer that you
11 filed in this case -- and I don't think I have it marked as
12 an exhibit, and I'll do that right now and we'll mark it as
13 Exhibit 12. It's the answer that you filed in this case.
14         (Whereupon, Exhibit 12 was marked for
15 identification.)
16         BY MR. PETRIE:
17     Q.  Sir, does that document look familiar to you?
18     A.  Yes, I'm familiar with it.
19     Q.  It's the answer that you filed in this Court in
20 response to the Government's complaint, and your answer was
21 filed on June 4, 2012.
22         Sir, on page 3, if you would, if you'd take a
23 look at that on page 3, and this touches on something that
24 at least tangentially we addressed earlier, but there's
25 another phrase in here I wanted to ask you about.

FREE STATE REPORTING, INC.
Court Reporting/Transcription
D.C. Area 301-261-1902
Balt.& Annap. 410-974-0947