UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 02:98-CV-00531-LRH-VCF |
| ) | |
| v. ) | |
| ) | ORDER |
| CLIVEN BUNDY, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Plaintiff United States' Motion to Enforce Injunction. Doc. #50.[1] Defendant Bundy filed a Response (Doc. #53), to which the United States replied (Doc. #54). Additionally, the United States filed a Notice of Supplemental Authority in Support of its Motion to Enforce Injunction, citing related case *United States v. Bundy*, No. 2:12-cv-0804-LDG-GWF ("*Bundy II*"). Doc. #55.

## I. Factual Background

This case arises out of Bundy's unauthorized and unlawful grazing of his livestock on property owned by the United States and administered by the Department of the Interior ("the DOI") through the Bureau of Land Management ("the BLM") and the National Park Service ("the NPS"). On November 3, 1998, the Court issued an Order permanently enjoining Bundy from

---

[1] Refers to the Court's docket number.

grazing his livestock on the former Bunkerville Allotment ("the Allotment"), and ordering him to remove his livestock from the Allotment by no later than November 30, 1998, and pay damages to the United States in the amount of $200 per day per head for any remaining livestock on the Allotment after November 30, 1998. Doc. #19.  On September 17, 1999, after Bundy failed to comply with the Court's first Order, the Court issued a second Order directing Bundy to comply with the 1998 Permanent Injunction and modifying the trespass damages owed to the United States. Doc. #46.  Notwithstanding the Court's Orders, Bundy continues to graze his cattle on the Allotment.  Thus, the United States seeks a third Order as follows: (1) declaring that Bundy has placed or allowed his livestock to graze on the Allotment in violation of the Court's Orders; (2) directing Bundy to remove his livestock from the Allotment within 45 days of the Court's Order; (3) explicitly authorizing the United States to seize and impound Bundy's livestock if they have not been removed as directed; (4) instructing Bundy that he may not physically interfere with an impoundment operation authorized by the Court's Order; and (5) authorizing the United States to seize and impound Bundy's livestock should he continue to violate the Court's Permanent Injunction in the future. *See* Doc. #50.

## II.     Legal Standard

Courts have inherent authority to enforce a permanent injunction where the enjoined party continues to engage in conduct that violates the injunction. *See Sys. Fed'n No. 91, Ry. Emp. Dep't, ALF-CIO v. Wright*, 364 U.S. 642, 647 (1961).  Furthermore, "sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Id.*  The power to modify derives from "the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief. *Id.*

///

///

### III. Discussion

Here, uncontested evidence demonstrates that Bundy continues to violate the Court's 1998 Permanent Injunction. Bundy himself admits to grazing his cattle on lands both inside and outside the Allotment in contravention of the Court's Orders. Doc. #50, Ex. 4, Oct. 23, 2011 Bundy Deposition. In addition to his own admissions, the United States has presented an abundance of evidence documenting Bundy's continued grazing on the Allotment. Doc. #50, Ex. 2, Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9, Ex. 13. In light of such flagrant and continuing violations, the Court finds that it has the authority to undertake whatever measures it deems necessary to ensure Bundy's future compliance with the 1998 Permanent Injunction. Specifically, if Bundy fails to comply with the Court's Orders, the Court has the explicit authority to direct that compliance be achieved—at Bundy's expense—by the BLM and/or NPS. *See* Fed. R. Civ. P. 70(a) ("[i]f a judgment requires a party to . . . perform [a] specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court").

Moreover, in its 1998 Order, the Court acknowledged that the BLM is explicitly authorized to impound and dispose of the unauthorized livestock after written notice to Bundy of its intent to impound. Doc. #19, p. 10 (citing 43 C.F.R. §§ 4150.2, 4150.4, 4150.4-1, 4150.4-2; *Klump v. United States*, 38 Fed. Cl. 243 (1997) (government had not violated takings clause in impounding cattle as sanction for unauthorized grazing on federal lands)); *see also* 43 C.F.R. §§ 4150.4-1 to 4150.4-5; 36 C.F.R. § 2.60(c). The Court went on to state that "[t]he government has shown commendable restraint in allowing this trespass to continue for so long without impounding Bundy's livestock." Doc. #19, p. 11. The Court now echos those sentiments and finds that seizure and impoundment of Bundy's livestock in the event of non-compliance with the Court's Permanent Injunction was fully contemplated by the Court in its 1998 Order.

The Court further finds that unforeseen obstacles necessitate a modification of the language in the Court's 1998 Order to effectuate the Court's original intent in issuing a Permanent

Injunction. First, the State of Nevada enacted a new statute in 2005 prohibiting the State Brand Inspector from issuing a brand inspection certificate to a federal agency unless the agency first obtains a court order approving its seizure of cattle. Nev. Rev. Stat. § 565.125.[2] According to the United States, the State of Nevada has clarified that a permanent injunction prohibiting trespass on public lands, such as the Order issued by this Court in 1998, is insufficient under section 565.125. *See* Doc. #50, p. 12.[3] The Court agrees with the United States that while section 565.125 does not in any way undermine or diminish the United States' authority to impound Bundy's livestock, an order explicitly authorizing seizure and impoundment would greatly facilitate the BLM and NPS's coordination with the State of Nevada and the State Brand Inspector. *See id.* Second, the Clark County Sheriff has indicated that he would also require a court order authorizing seizure and impoundment in order to provide local law enforcement support to the United States. *See id.* Indeed, local law enforcement support would be particularly important given the United States' concern about a confrontation with Bundy in the event of a seizure and impoundment. *See* Doc. #50, p. 13. Thus, to the extent that a renewed order specifically authorizing seizure and impoundment and directing Bundy not to physically interfere with any such seizure and impoundment is deemed a modification, the Court finds that the aforementioned changed circumstances justify the revision.

///

///

///

---

[2] Prior to 2005, the BLM had a Memorandum of Understanding with the Nevada Department of Agriculture under which the State Brand Inspectors would issue brand inspection certificates to the BLM for any cattle impounded on federal land if the BLM had complied with notice and other federal regulatory provisions for impoundment. *See* Doc. #50, p. 11, n. 7.

[3] The United States disagrees with the State of Nevada's characterization of the statute. Nevertheless, the Court finds it unnecessary to reach the issue of the statute's proper interpretation and/or application to the Court's 1998 and 1999 Orders.

4

Finally, the Court finds that Bundy's objections to the United States' Motion, many of which have been disposed of in prior proceedings,[4] are without merit. The Court has stated unequivocally on numerous occasions that it has jurisdiction to hear this case, and that the Allotment is owned by the United States and managed by the DOI through the BLM and the NPS. Bundy's repeated suggestions to the contrary are entirely unavailing.

IT IS THEREFORE ORDERED that the United States' Motion to Enforce Injunction (Doc. #50) is hereby GRANTED.

IT IS FURTHER ORDERED that Bundy is permanently enjoined from trespassing on the former Bunkerville Allotment.

IT IS FURTHER ORDERED that the United States is entitled to protect the former Bunkerville Allotment against this trespass, and all future trespasses by Bundy.

IT IS FURTHER ORDERED that Bundy shall remove his livestock from the former Bunkerville Allotment within 45 days of the date hereof, and that the United States is entitled to seize and remove to impound any of Bundy's cattle that remain in trespass after 45 days of the date hereof.

IT IS FURTHER ORDERED that the United States is entitled to seize and remove to impound any of Bundy's cattle for any future trespasses, provided the United States has complied with the notice provisions under the governing regulations of the United States Department of the Interior.

///

///

---

[4] *See* Doc. # 19, p. 4-6, 7-9 (disposing of Bundy's arguments that the Court does not have jurisdiction and that the public lands in Nevada are not the property of the United States); *see also Bundy II*, Doc. #35 (rejecting Bundy's defenses as to the Court's jurisdiction, the United States' ownership of public lands in Nevada, the United States' authority to sanction Bundy for trespass, and the inapplicability of the Nevada Constitution and Nevada Statutes to the present controversy).

IT IS FURTHER ORDERED that Bundy shall not physically interfere with any seizure or impoundment operation authorized by this Court's Order.

IT IS SO ORDERED.

DATED this 8th day of October, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE