UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLIVEN D. BUNDY,

    Defendant.

Case No. 2:98-cv-00531-LRH-VCF

ORDER

On October 9, 2013, the court granted the United States' motion to enforce a previously ordered injunction. ECF No. 56. Cliven Bundy now moves to reopen, set aside, or vacate the 2013 order.[1] ECF No. 61. The United States opposed Bundy's motion, and Bundy replied. ECF Nos. 67, 70. The court now denies Bundy's motion, finding it untimely in part and meritless as a whole. Because the court finds the motion untimely and meritless, it also denies Bundy's request for an evidentiary hearing.

## I. BACKGROUND

This matter began in March 1998, at which time the United States filed suit against Bundy for the unauthorized and unlawful grazing of his livestock on property owned by the United States. ECF No. 1. In a November 1998 order, the court permanently enjoined Bundy from grazing his livestock on the property. ECF No. 19. The 1998 order also instructed Bundy to

---

[1] Bundy's motion requests the court to reopen, set aside, or vacate two prior orders: ECF No. 55 and ECF No. 56. ECF No. 61. But the filing at ECF No. 55 does not contain a court order. *See* ECF No. 55. It is a notice of supplemental authority filed by the United States in support of its motion to enforce the underlying injunction. ECF No. 55. Thus, the court considers Bundy's arguments only as they pertain to ECF No. 56, which is the court's October 9, 2013 order.

1

remove his livestock from the property and to pay $200 per day per head for any remaining livestock on the property after November 30, 1998. *Id.* Bundy appealed the court's order, and the Ninth Circuit Court of Appeals affirmed the order in May 1999. ECF No. 42. Thereafter, Bundy failed to comply with the court's order. ECF No. 45. The court then issued a second order in September 1999 that demanded Bundy's compliance with the first order and that modified the daily damages owed to the United States. ECF No. 45. Bundy failed again to comply with the court's order. *See* ECF No. 56.

After Bundy failed to comply with the court's 1998 and 1999 orders, the court issued a third order in October 2013. *Id.* The 2013 order directed Bundy to remove his livestock from the property within 45 days. *Id.* In the event that Bundy did not remove his livestock within 45 days, the order authorized the United States to impound any of Bundy's livestock that remained on the property. *Id.* The order also authorized the United States to continue to seize and remove to impound any of Bundy's livestock for future trespasses as long as the United States complied with the notice requirements under the governing regulations of the Department of the Interior. *Id.* Finally, the order commanded Bundy to not interfere with any impoundment operations. *Id.*

Despite being given three opportunities by way of court orders, Bundy failed to remove his livestock from the property. *See* ECF Nos. 61 at 3–5, 67 at 2–3. Thus, under the 2013 order, the United States initiated impoundment operations to remove the livestock from the property in 2014. *See* ECF Nos. 61 at 3–5, 67 at 2–3. But Bundy and his supporters clashed with the enforcing government agents during the impoundment operations. The clash led to the government's abandonment of the impoundment operation out of fear for the safety of those who were involved. ECF Nos. 61 at 5, 67 at 2–3.

Bundy alleges that the government agents caused hundreds of thousands of dollars in damages to improvements made by him or his ancestors to the property over the years prior to 2014 and the death of over 40 head of cattle as a result of the impoundment operations. ECF No. 61 at 3–5. Based on his allegations and the facts of this case, Bundy now moves to reopen, set aside, or vacate the 2013 order. ECF No. 61.

/ / /

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60 permits a party to move for relief from a final judgment under certain circumstances. Fed. R. Civ. P. 60(b). Such circumstances include the judgment being void, the judgment being satisfied, or any other reason that justifies relief. Fed. R. Civ. P. 60(b)(4)-(6). The relief must be sought within a reasonable time. Fed. R. Civ. P. 60(c)(1).

While Rule 60(b) allows a party to move for relief from a final judgment, it is not granted liberally; the relief instead is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Courts must take "into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Lemoge v. United States*, 587 F.3d 1188, 1196–97 (9th Cir. 2009) (internal quotation marks omitted).

## III. DISCUSSION

To begin, the court first considers the timeliness of Bundy's motion. It then addresses Bundy's arguments under Rule 60(b) and under the theory of equitable estoppel.

### A. Timeliness

The court first determines if Bundy asserted his motion in a timely manner. Rule 60(c) requires that a Rule 60(b) motion to be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Lemoge*, 587 F.3d at 1196–97 (internal quotation marks removed). Importantly, "[t]here is no time limit on a Rule 60(b)(4) motion to set aside a judgment as void." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

Bundy brings his motion under Rule 60(b)(4)–(6). While his arguments under Rule 60(b)(4) cannot be time-barred, the portions of Bundy's motion brought under Rule 60(b)(5) and

(b)(6) must have been asserted within a reasonable time. The court determines if Bundy asserted such portions in a timely manner by turning to the four considerations set forth in *Lemoge*.

The first consideration, the interest of finality, disfavors Bundy because vacating the motion after a four-year delay would adversely affect the finality of the 2013 order. The order was entered in October 2013. Bundy did not challenge it until November 2017—over four years later. The underlying issue that the order serves to resolve—Bundy's continuing trespass on United States' property—is still occurring. Setting aside the order after four years with the continuing trespass still occurring would contravene the principle of finality.

The second consideration, the reason for delay, also disfavors Bundy because Bundy offers no credible reason to explain his four-year delay. He first attempts to explain the delay by citing to his incarceration related to the criminal proceedings following the 2014 impoundment operation. But incarceration would not have prevented Bundy from pursuing his interests in this civil matter for the past four years. He then cites the United States' delay in enforcing the original injunctions. However, even if the United States was delayed in enforcing the original injunctions, the delays would not have affected Bundy's ability to challenge the 2013 order at an earlier time. Bundy therefore fails to offer any credible explanation for his four-year delay.

The third consideration, the ability of Bundy to learn of the grounds relied upon at an earlier time, also supports a finding of untimeliness. Bundy knew about the grounds for his motion since 2014. In arguing to set aside the 2013 order, Bundy relies on the events that occurred during the impoundment operations in 2014. Thus, Bundy has had knowledge of the allegations and facts that he relies on in making his motion for at least three years.

The court holds the first three considerations require a finding that Bundy did not challenge the 2013 order within a reasonable time as required by Rule 60(c). The court therefore denies the portions of the motion brought under Rule 60(b)(5) and (b)(6) as untimely.

**B. Rule 60 (b)**

To be sure, even if Bundy's motion was timely, Bundy fails to establish a basis for reopening, setting aside, or vacating the 2013 order under any of the asserted sections of Rule 60(b). Bundy seeks to vacate the 2013 order under three sections of Rule 60(b). He first appeals

4

to Rule 60(b)(4), then to Rule 60(b)(5), and finally to Rule 60(b)(6). The court considers each section in turn.

   *1. Rule 60(b)(4)*

Bundy first argues for relief under Rule 60 (b)(4), which allows for relief when a judgment, order, or proceeding is void. Fed. R. Civ. P. 60(b)(4). A final judgment is void under Rule 60(b)(4) "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010); *see also United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999) ("A final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked [subject matter or personal jurisdiction] or acted in a manner inconsistent with due process of law."). A judgment is "not void merely because it is erroneous." *Berke*, 170 F.3d at 883 (internal quotation marks omitted). Instead, the judgment must lack "an arguable basis for jurisdiction" or result in a due process violation. *Espinosa*, 559 U.S. at 271 (internal quotation marks omitted); *see also United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661–62 (1st Cir. 1990) ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and … only rare instances of a clear usurpation of power will render a judgment void.") (brackets and internal quotation marks omitted) (cited with approval by *Espinosa*, 559 U.S. at 271).

Bundy does not argue that the court lacked jurisdiction or that the court acted in a manner inconsistent with due process principles. He instead argues that the 2013 order must be declared void for vagueness under Rule 65 for being "so fundamentally boundless." ECF No. 61 at 9. In support of his argument, Bundy cites *United States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985) for the proposition that a judgment can be found void if "its parameters are vague or indecipherable[,] … it is based on misinterpretation of the law[,] or [it is] issued outside lawful authority." *Id.* The court disagrees with Bundy's interpretation of *Holtzman*.

Under *Holtzman*, a judgment is void only if a court lacked jurisdiction or violated due process principles. *Id.* at 724. *Holtzman* identified certain circumstances that may result in a void judgment, including when "a court plainly misinterprets the scope of a statutory *grant of*

5

*jurisdiction*[.]" *Id.* (emphasis added). But the misinterpretation as to the court's jurisdiction must result in "a blatant usurpation of power." *Id.* Contrary to Bundy's assertions, *Holtzman* did not expand the circumstances for which a judgment can be declared void under Rule 60(b)(4) to include judgments that are "vague or indecipherable" or those containing general legal misinterpretations. *See id.* Because Bundy does not argue that the court lacked jurisdiction or violated due process, his motion under Rule 60(b)(4) fails.[2]

### 2. Rule 60(b)(5)

Bundy next argues for relief under section (b)(5) of Rule 60. This section provides for relief when a judgment has been satisfied or applying the judgment "prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Bundy essentially argues that the alleged damages to improvements on the property made by him or his ancestors should offset the court-ordered damages owed by Bundy to the United States. He then reasons that offsetting the court-ordered damages with the alleged property damages would satisfy the 2013 order. The court disagrees for two reasons. First, if the United States owes Bundy for damages occurring during the impoundment operations in 2014, the matter is distinct from the issues resolved by the 2013 order. The issue would therefore be better decided in an independent civil matter. Second, even if the court offset the court-ordered damages with the alleged property damages, Bundy would still be in violation of the 2013 order. The 2013 order centered on the issue of Bundy's ongoing trespass on the property. The offsetting of any damages between the two parties would not cure the issue of Bundy's ongoing trespass. Further, the prospective application of the 2013 order is not inequitable, because Bundy continues to defy the multiple court orders over the history of this dispute by refusing to remove his livestock from the property. The court therefore dismisses Bundy's arguments under Rule 60(b)(5).

/ / /

---

[2] Bundy could not genuinely argue against the court's jurisdiction. The court has "stated unequivocally on numerous occasions that it has jurisdiction to hear this case[.]" ECF No. 56 at 5; *see also* 28 U.S.C. §§ 1331, 1345; *see also Holtzman*, 762 F.2d at 724 (stating federal courts have the "power to issue injunctions in cases over which they otherwise have subject matter jurisdiction").

### 3. Rule 60(b)(6)

Bundy also argues for relief under section (b)(6) of Rule 60. Rule 60(b)(6) allows a party to seek relief from a final judgment for any reason that justifies relief. Fed. R. Civ. P. 60(b)(6). "[Rule 60(b)(6)] has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005), *overruled on other grounds by United States v. Washington*, 593 F.3d 790 (9th Cir. 2010) (internal quotation marks omitted). Thus, to receive the relief offered under Rule 60(b)(6), the moving party must "first make a threshold 'showing of extraordinary circumstances.'" *Ybarra v. Filson*, 869 F.3d 1016, 1023 (9th Cir. 2017) (quoting *Towery v. Ryan*, 673 F.3d 933, 940 (9th Cir. 2012) (per curiam) (overruled on other grounds)). To do so, the party must "demonstrate both injury and circumstances beyond his control that prevented him from proceeding … in a proper fashion. *Washington*, 394 F.3d at 1157 (internal quotation marks omitted).

Bundy argues for relief under Rule 60(b)(6) by asserting that the failed attempt to carry out the impoundment operations demonstrates that the 2013 order is stale and impossible to execute. ECF No. 61 at 13. But in making his argument, Bundy omits the paramount fact: he willfully defied the court's 2013 order by interfering with the executing agents' attempts to remove his livestock. Further, without interference, the United States' efforts would likely have been successful. No showing has been made that the 2013 order was impossible to execute. The court will not vacate the 2013 order based on impossibility caused by Bundy's interference with the United States' impoundment operations—an interference that demonstrates Bundy clearly and intentionally ignored the court's 2013 order.

The court also finds that the United States' failed attempt to impound Bundy's livestock, despite the alleged use of excessive personnel and equipment, does not constitute extraordinary circumstances. Bundy has shown no injury and has presented no circumstances beyond his control that prevented his timely litigation in correcting the 2013 order. He instead complains that his unlawful activity remains enjoined. But this is the purpose of the 2013 order—to enjoin

the unlawful grazing of Bundy's livestock on the property. He also complains that the prospective enforcement of the 2013 order improperly regulates the State of Nevada and its citizens. It does not. It regulates only Bundy's conduct related to grazing livestock on the property. The court denies Bundy relief under Rule 60(b)(6) accordingly.

**C. Equitable Estoppel**

The court now turns to Bundy's reliance on the doctrine of equitable estoppel. A party may be equitably estopped if four elements are met:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*United States v. Wharton*, 514 F.2d 406, 412 (9th Cir. 1975). Affirmative misconduct is required before a party may assert equitable estoppel against the government. *Id.* at 411–12; *see also Lehman v. United States*, 154 F.3d 1010, 1016–17 (9th Cir. 1998) (requiring affirmative misconduct that "go[es] beyond mere negligence"). Bundy asserts the defense of equitable estoppel under two theories, which the court addresses below.

*1. Theory One*

Bundy first argues that the United States delayed enforcing the initial orders in this matter from 1999 to 2013 and, through its silence, allowed Bundy to make improvements on the property during that time. ECF No. 61 at 11. However, Bundy omits most of the case history when making his argument.

This matter began after Bundy and the United States disagreed for several years during the mid-1990s on whether Bundy's use of the property was lawful. The United States finally sought court intervention in 1998 to enjoin Bundy from using the land. It sought court intervention multiple times thereafter due to Bundy's noncompliance with the 1998 order. In addition to seeking court intervention multiple times, the United States sent repeated notices communicating to Bundy that he had no authorization to use the land. *See* ECF No. 50-2 at ¶¶ 12, 17, 20–23, 27 (describing notifications to Bundy from the Bureau of Land Management regarding Bundy's unauthorized use of the property). Bundy therefore fails to show that he was

ignorant to the true facts of this case; he was on notice at all relevant times that his use of the property was considered unlawful.

Further, Bundy has failed to show any affirmative misconduct on behalf of the United States. He instead relies on the United States' silence, citing *United States v. Georgia-Pacific Company*, 421 F.3d 92 (9th Cir. 1970). It is true that a party's silence can justify the application of equitable estoppel if the party had a duty to speak. *Id.* at 97. But when asserting the defense against the government, affirmative misconduct is required. *Lehman*, 154 F.3d at 1016–17. Bundy makes no effort to show affirmative misconduct, rather than silence, on behalf of the United States. Thus, his first theory for equitable estoppel must fail.

### 2. Theory 2

Bundy next argues that United States concealed from Bundy the availability of a free grazing permit under the Taylor Grazing Act, 43 U.S.C. § 315(d). He cites *Wharton* for the proposition that the United States had a duty to inform Bundy of the availability of Taylor Grazing Act permits. ECF No. 61 at 11–12. *Wharton* puts forth no such rule. *See* 514 F.3d 406 (allowing equitable estoppel to be asserted against the government after the government gave erroneous advice and made misrepresentations). *Wharton* stands for the principle that the government may be equitably estopped if it engages in affirmative misconduct. *Id.* at 411–13. It therefore helps to rectify fundamental injustices in circumstances where the government has acted wrongfully. *Id.* It does not place any affirmative duty on the government to provide advice. *See id.* Further, "an omission to give advice is insufficient conduct to support equitable estoppel against the government." *Lehman*, 154 F.3d at 1017. Thus, the court dismisses Bundy's second theory for equitable estoppel.

/ / /

/ / /

/ / /

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Cliven D. Bundy's motion to reopen, set aside, and vacate orders pursuant to Rule 60(b) (ECF No. 61) is **DENIED.**

IT IS SO ORDERED.

DATED this 12th day of July, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE